# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-73-LRR |
| vs. | **ORDER** |
| HECTOR VASQUEZ GUTIERREZ, | |
| Defendant. | |

## *I. INTRODUCTION*

The matter before the court is Defendant Hector Vasquez Gutierrez's "Motion to Dismiss Based upon Improper Venue" ("Motion") (docket no. 17).

## *II. RELEVANT PROCEDURAL HISTORY*

On August 4, 2010, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. Count 1 charges Defendant with Illegal Reentry After an Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) & (b)(2). On September 20, 2010, Defendant filed the Motion. On September 30, 2010, the government filed a Resistance (docket no. 21). On October 13, 2010, the court held a hearing ("Hearing") on the Motion. Assistant United States Attorney Richard Murphy represented the government. Attorney Rockne Cole represented Defendant, who was personally present.

## *III. RELEVANT FACTUAL BACKGROUND*

At the Hearing, Immigration and Customs Enforcement ("ICE") Agent Kevin Donnelly testified to the following facts:

On July 18, 2010, Agent Donnelly received a telephone call from Immigration Enforcement Agent ("IEA") Lynette Hernandez. IEA Hernandez informed Agent Donnelly that a removable alien was at the Scott County Jail. IEA Hernandez provided Agent Donnelly with her notes from interviewing the removable alien. The removable

alien at the Scott County Jail provided IEA Hernandez with the name "Jose Tellez Baeza." During the alien's interview with IEA Hernandez, he informed her that he was in the country illegally. IEA Hernandez placed an immigration detainer on the alien who identified himself as Jose Tellez Baeza.[1]

Agent Donnelly testified that he drove to Davenport to collect Baeza from the jail in order to begin removal proceedings. Agent Donnelly drove Baeza to the Cedar Rapids, Iowa ICE office, which was the nearest ICE office in Iowa. At the ICE office in Cedar Rapids, Agent Donnelly took photographs and fingerprints of Baeza. Eventually, the fingerprint records check revealed Baeza's true identity, Defendant Hector Vasquez Gutierrez. These records also revealed Defendant's prior removal history.

## *IV. RELEVANT LAW*

Section 1326 provides that an alien is guilty of a crime if that alien "has been . . . deported[] or removed . . . [from] the United States" and thereafter "enters . . . or is at any time found in, the United States . . . ." 8 U.S.C. § 1326(a)(1)-(2).

The Eighth Circuit Court of Appeals has held that illegal reentry, as set forth in § 1326, is a "continuing violation." *United States v. Diaz-Diaz*, 135 F.3d 572, 577 (8th Cir. 1998). This means that illegal reentry "is not complete until the alien is discovered by immigration authorities." *Id.* (internal quotation marks omitted). "'Discovery' in this context consists of two elements: (1) the discovery of a previously deported alien's physical presence in the United States; and (2) the ascertainment of the identity and status of the alien." *Id.*

Additionally, the Ninth and Second Circuits have held that "[t]he offense of being 'found in' the United States in violation § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence

---

[1] An immigration detainer allows ICE to take custody of a subject if that subject is released from state or federal custody in order to begin removal proceedings.

2

typical of law enforcement authorities could have discovered, the illegality of his presence." *United States v. Hernandez*, 189 F.3d 785, 789 (9th Cir. 1999) (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 282 (2d Cir. 1995)). Likewise, the Fourth Circuit Court of Appeals found venue proper when a defendant was transferred to another district for the purposes of ascertaining his identity and status, because when federal immigration authorities transferred the defendant, they were conducting an investigation and lacked "actual knowledge of either his real identity or immigration status, let alone both." *United States v. Uribe-Rios*, 558 F.3d 347, 357 (4th Cir. 2009).

Defendant cites *United States v. Gallegos-Delgado*, No. CR97-59, 1998 WL 34113181 (N.D. Iowa Feb. 6, 1998) in support of the Motion. In that case, the defendant was arrested in Perry, Iowa, in the Southern District of Iowa. *Gallegos-Delgado*, 1998 WL 34113181, at *1. While in state custody, Defendant admitted that he was in the country illegally. *Id*. Immigration and Naturalization Service ("INS") authorities transported the defendant to the Northern District of Iowa where he was charged with illegal reentry. *Id*. United States Magistrate Judge Jon Jarvey found that the offense was completed in the Southern District and that venue was therefore improper in the Northern District. *Id*. at *2-3. Judge Jarvey reasoned that Defendant had been "found in" the Southern District by virtue of being discovered there and having admitted he was illegally in the United States. *Id*. There is no indication that the defendant in *Gallegos-Delgado* gave an alias when originally apprehended in Perry.

## *V. ANALYSIS*

The court finds that venue is proper in the Northern District of Iowa. Agent Donnelly's testimony established that Defendant was not "found" until law enforcement ascertained his real identity at the Cedar Rapids ICE office. *See Diaz-Diaz*, 135 F.3d at 577. Defendant argued at the Hearing that Agent Donnelly could have ascertained his identity in Davenport had he conducted the fingerprint records check at the Scott County

3

Jail. However, Agent Donnelly did not deliberately shield himself from learning Defendant's true identity for the purpose of charging him in the Northern District of Iowa. To the contrary, Agent Donnelly testified that it is standard procedure to conduct fingerprint checks at the ICE office after an alien has identified himself with a certain name and indicated that he is in the country illegally. The court finds that Agent Donnelly exercised due diligence in his investigation. *See Hernandez*, 189 F.3d at 789 (stating that the offense of illegal reentry is not complete until law enforcement discovers the alien's true identity or "with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence").

Defendant also argued that the offense was completed in Davenport, Iowa. He analogized illegal reentry to a burglary offense by arguing that venue for a burglary is proper where the burglary took place, not where the perpetrator is found. Defendant properly describes venue related to the offense of burglary, however, burglary does not have as an element being "found" in a certain place. Section 1326 requires the alien to be "found" before prosecution may commence. Being "found" includes ascertaining the alien's true identity. *See Diaz-Diaz*, 135 F.3d at 577.

Finally, Defendant's cited authority is distinguishable from the instant case. In *Gallegos-Delgado*, the offense was completed in the Southern District of Iowa, because the defendant was "found" there. *See Gallegos-Delgado*, 1998 WL 34113181, at *2- 3. He did not provide an alias or do anything else to conceal his identity. Therefore, venue in that case was not proper in the Northern District of Iowa. Here, the offense was not completed until Agent Donnelly discovered Defendant's true identity in the Northern District of Iowa.

### *VI. CONCLUSION*

For the foregoing reasons, the Motion (docket no. 17) is **DENIED**.

**IT IS SO ORDERED.**

4

**DATED** this 19th day of October, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA